In the Matter of DONNA BARIE, on Behalf of Herself and All Other Persons Similarly Situated, Respondent, v ABE LAVINE, as Commissioner of New York State Department of Social Services, Appellant, et al., Respondent.

Third Department, May 8, 1975

*Louis J. Lefkowitz*, Attorney-General (*Jean M. Coon* and *Ruth Kessler Toch* of counsel), for appellant.

*Legal Aid Society of Albany, Inc.* (*Lanny Earl Walter* and *Lawrence F. Klepper* of counsel), for respondent.

HERLIHY, P. J. This is an appeal by the Commissioner of New York State Department of Social Services from a judgment of the Supreme Court at Special Term, entered June 27, 1974 in Albany County, which, in a proceeding pursuant to CPLR article 78, granted petitioners' petition; annulled appellant's decision after fair hearing, dated September 14, 1973; declared that the regulation of the appellant providing for a 30-day suspension of benefits for violation of subdivision 4 of section 131 of the Social Services Law is illegal and contrary to law; and ordered that suspension of benefits be limited to the period during which a recipient or applicant for public assistance refuses to comply with the statute and regulations and shall not be for any specified period of time.

As the result of a fair hearing, the appellant found that the petitioner had violated the provisions of subdivision 5 (formerly 4) of section 131 of the Social Services Law and pursuant to the department regulations at 18 NYCRR 385.7 was "disqualified from receiving assistance for 30 days thereafter and until such time as he is willing to comply with the requirements of this Part".

Subdivision 5 of section 131 of the Social Services Law as applicable provides: "No assistance or care shall be given to an employable person who has not registered with the nearest local employment agency of the department of labor or has refused to accept employment in which he is able to engage."

The petitioner was 23 years old, a resident of Albany, and, since February, 1973, a recipient of public assistance in the home relief category from the Albany County Department of Social Services. On July 3 she was advised that her case was being closed because of her refusal of a job referral. As noted by Special Term in its decision, the factual determination of the appellant as to a refusal of employment is not arbitrary and capricious and the determination is supported by substantial evidence.

Special Term declared the automatic 30-day suspension from benefits "illegal and contrary to law" apparently upon a finding that it constituted cruel and inhuman punishment. Accordingly, the first issue to be considered is whether or not

the mandatory sanction of 30 days with no benefits is the equivalent of punishment and, if so, whether or not it is cruel and inhuman.

The record establishes that, other than her welfare benefits, the petitioner has no assets and is unemployed. While her unemployment is presumptively her deliberate choice as a result of her refusal of the referral for employment, the fact is that, unless some private charities or individuals intervene, she may be without food and possibly without shelter as a result of the sanction. As a prima facie matter, Special Term is correct in concluding the appellant's rule means that persons such as petitioner are subject to hunger. But, it also appears that petitioner was capable of working and, if so minded, could have probably obtained immediate employment.

The record establishes that the purpose of the work provisions contained in subdivision 5 of section 131 of the Social Services Law and rule 385.7 is to get people not truly without the capacity to aid in their own support off welfare rolls and onto payrolls. Neither the statute nor the rule is directly penal in nature since there is no criminal conviction or loss of liberty by confinement. For the prohibition of the Eighth Amendment to be applicable, the penalty must be one imposing punishment. When the disability imposed for proscribed conduct will accomplish some legitimate purpose of government other than to punish, it is considered nonpenal (*Trop v Dulles,* 356 US 86, 96).

Section 1 of article XVII of the New York State Constitution provides: "The aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine." While the objective facts of hunger and a lack of sufficient assets to provide for one's own food, shelter and clothing establish prima facie a "needy" person, nevertheless, the word "needy" does not in its ordinary meaning encompass a person who is creating the need by consistently avoiding or refusing to provide for his needs. In this regard subdivision 1 of section 131 of the Social Services Law follows the constitutional mandate by imposing the duty upon the appropriate officials "to provide adequately for those *unable to maintain themselves* " (emphasis added). It is apparent that only those persons who are "unable" to maintain themselves are necessarily eligible for State assistance by virtue of the constitu-

tional mandate and the determination of the Legislature that those who refuse to seek employment are not so lacking in ability is not unreasonable within the constitutional language. From the foregoing construction, it appears that the disqualification from benefits resulting from subdivision 5 of section 131 of the Social Services Law and rule 385.7 relates to eligibility for benefits and is not penal in nature. Accordingly, the denial of eligibility cannot be classified as cruel and inhuman punishment as proscribed by the Eighth Amendment of the United States Constitution. (See *Trop v Dulles, supra.*)

The remaining issue raised by the petitioner and not heretofore disposed of is whether or not the promulgation of the mandatory 30-day suspension by the appellant in 18 NYCRR 385.7 constituted an action in excess of his authority under the Social Services Law.

Subdivision 5 of section 131 of the Social Services Law does not impose any particular period of disqualification for persons such as the petitioner. Upon its face, it would appear to literally authorize a permanent suspension of benefits as is noted by the appellant. In subdivision 11 of said section 131 the Legislature has imposed a disqualification of 75 days for those who are employed prior to applying for benefits and either voluntarily terminate their employment or reduce their earning capacity so as to be eligible for benefits. While the petitioner is not one who deliberately arranged her employment status so as to initially qualify for benefits, her conduct is such as to be the equivalent of attempting to maintain eligibility while not truly unable to support herself. Her conduct does not significantly differ in degree from that for which the 75-day disqualification is imposed by the Legislature.

The Legislature, having determined that a mandatory 75-day suspension was sufficient for eligibility purposes as to one who arranges his employment status to initially become eligible, it cannot be said that the interpretation of subdivision 5 of section 131 of the Social Services Law by the appellant is irrational or unreasonable *(Matter of Howard v Wyman,* 28 NY2d 434, 438). Accordingly, the rule may not be vacated as in excess of the appellant's authority.

Upon the present record, the petitioner has failed to establish any basis for overcoming the validity of so much of 18 NYCRR 385.7 as mandates a 30-day suspension. While the apparent result is petitioner's abject destitution, the State has

not yet undertaken the burden of estabishing eligibility for benefits upon that sole basis. The requirement that needy people help themselves to the extent they are able to do so is reasonable and the mandatory suspension of benefits is reasonably related to an accomplishment of that purpose. In balance, considering the over-all duties and obligations of the Commissioner of the New York State Department of Social Services, the rule, and its enforcement, under the present circumstances, is not illegal and contrary to law as determined by Special Term.

The judgment should be reversed, on the law and the facts, without costs, and the petition dismissed.

GREENBLOTT, J. (dissenting). I respectfully dissent. Without considering whether or not the administrative regulation in question constitutes "cruel and inhuman punishment," I agree with the conclusion of the Justice at Special Term that the imposition of a mandatory suspension from benefits for 30 days has no basis in section 131.

As noted by the majority, subdivision 11 of section 131 (with which we are not here concerned) imposes a 75-day disqualification for violations of that subdivision. Thus, where the Legislature saw fit to impose a minimum disqualification, it did so by express provision. To conclude that the challenged regulation is permissible under subdivision 5 of section 131 simply because it imposes a less harsh, and therefore more "reasonable" disqualification than is mandated by subdivision 11 does not, in my view, answer the more fundamental inquiry of whether the power to establish minimum periods of disqualification has been delegated to the appellant by the Legislature.

I can find nothing in the statute to warrant an affirmative answer to this inquiry. The imposition of a minimum disqualification is, in my view, a legislative act, not a matter which, in the absence of express statutory authorization, can be left to appellant's discretion under the guise of interpretation. As I read subdivision 5, it permits of only one interpretation, to wit, that while the appellant can impose a suspension, such a suspension must be limited to the period during which a welfare recipient continues in violation of statutory requirements for qualification. (Of course, it does remain within appellant's power to determine whether or not a recipient is in violation.) Had the Legislature intended to authorize minimum disqualifications for noncompliance with subdivision 5, it

could have done so by the same method adopted in subdivision 11.

It is well settled that the wisdom of legislation is not a factor to be considered in determining constitutionality. As a corollary, administrative agencies cannot be permitted to legislate merely because the resulting regulations are "wise" or "reasonable" in the view of this court. *Matter of Howard v Wyman* (28 NY2d 434), relied upon by the majority, does not lead to a contrary result. In that case, the statute involved declared that "a social services official *may* make provisions for the * * * replacement of necessary furniture and clothing for persons * * * who have suffered the loss of such items as the result of fire, flood or *other like catastrophe*" (Social Services Law, § 131-a, subd 6; emphasis added). This language in and of itself, imposing no mandate, was discretionary in nature, and thus it was appropriate to permit the interpretation of "catastrophe" by administrative regulation. Here, where the Legislature was obviously aware of its power to establish a minimum disqualification and obviously chose not to exercise it, there is no warrant for the conclusion that appellant could arrogate that function to himself. The statute declares that no assistance or care shall be given to a person who does not comply with its requirements; when such a person does comply, any suspension under that provision should cease. For these reasons, I would affirm the decision at Special Term.

SWEENEY, KANE and REYNOLDS, JJ., concur with HERLIHY, P. J.; GREENBLOTT, J., dissents and votes to affirm in an opinion.

Judgment reversed, on the law and the facts, without costs, and petition dismissed.