OPINION OF THE COURT
John H. Doerr, J.
Plaintiffs, individually and on behalf of all others similarly situated have commenced this proceeding seeking an adjudication punishing for contempt the New York State Commissioner of Social Services (acting) and his general counsel *1006 pursuant to section 753 (subd A, par 1) of the Judiciary Law. Plaintiffs have further moved for summary judgment declaring section 8 of chapter 77 of the Laws of 1977 unconstitutional and permanently enjoining its enforcement.
The relief requested is predicated upon an order of this court addressed to defendants and granted July 21, 1977, which, inter alia, preliminarily enjoined them, pending a determination on the merits, from implementing section 8 of chapter 77 of the Laws of 1977 and directing notification of such injunction to all local social service commissioners throughout the State.
Immediately upon service of such order upon the Attorney-General, defendants served and filed a notice of appeal therefrom, which automatically stayed same. Plaintiffs then applied to the Appellate Division, Fourth Judicial Department, pursuant to CPLR 5519 (subd [c]) and on July 29, 1977, the Honorable Harry D. Goldman, a Justice of the Supreme Court, by order to show cause, and among other things, vacated such automatic stay.
In response thereto defendants served an affidavit of intent to move for permission to appeal the order of Mr. Justice Goldman which again invoked the automatic stay provided by CPLR 5519 (subd [a]).
Application to vacate that stay was granted on August 5, 1977 by order of the Honorable John S. Marsh, Presiding Justice, Appellate Division, Fourth Department.
The bottom line of this flurry of judicial applications and orders translates to the fact that this court’s order of July 21, 1977 remains in full force and effect and claiming noncompliance therewith by defendants, plaintiffs have instituted the instant proceeding to punish them for their alleged contumacious conduct. To arrive at the answer to that question requires an analysis of plaintiffs’ contentions and the underlying complaint in the first instance.
The facts as presented in the complaint and supporting papers are not seriously in dispute. Since the only issues to be resolved are questions of law, ripe for determination, summary judgment is the proper procedural vehicle whereby a judicial decision can be achieved.
Plaintiffs, who are now or were recipients of public assistance in the State’s Home Relief Program (Social Services Law, §§ 157-166), are challenging the constitutionality of an amend *1007 ment to New York’s "work rule” as codified in the Social Services Law. The dispute arises in connection with section 164 (subd 3, par [b]) of the Social Services Law which stated: "The number of days of work to be given each person shall be determined by the amount of the budget deficit of the recipient and his family computed on local home relief budget schedules. No person shall be required to work for more than the number of days necessary to earn such amount or to be paid more than such amount. No person shall be required to work more than eight hours in a day or more than forty hours in a week.”
That section was repealed and amended by section 8 of chapter 77 of the Laws of 1977, so that the plaintiffs are now bound by the following requirements: "(b) (i) Each person assigned to a public work project shall be required to participate an average of three days per week without regard to the amount of the budget deficit of the person or his family. No person shall be required to work more than eight hours in a day. Each person shall be required to work the standard work day for the job to which he is assigned. An average of two days per week shall remain available for such persons to seek work or participate in manpower services as required by the department, (ii) Provisions shall be made to excuse from participation for an appropriate period of time a person who is otherwise complying with existing law or regulation, for the purpose of allowing such person to report to a bona-fide employment interview or allowing excused absences based upon the prevailing personnel practices of the government unit, agency or institution to which such person has been assigned.”
Subjectively the statute causes an uneven and irregular result to plaintiffs and the members of the class they seek to represent, among themselves and in relation to others in need.[1]
To illustrate the dichotomy as among themselves, plaintiff Tina Young, a minor, having been determined eligible for assistance would be required to work 104 hours per month as a painter in order to receive $30 in aid or approximately 28# per hour.
Shawn Tamara Blandford was not required to participate in *1008 work projects in order to receive home relief prior to January 1, 1977. From that date she was required to work three hours a day, three days a week in order to receive a grant of home relief totaling $64.60 a month and she must now work approximately 104 hours for that same amount which converts to some 62^ per hour.
Plaintiff William Burnett was employed in a plant earning $3.75 per hour when it closed in November, 1975. Unable to find employment, he, his wife and two children receive a supplemental home relief grant of $92.60 a month. In September, 1976, he was assigned to a work relief project for 12 hours bimonthly at $3.75 per hour. At the end of April, he was required to work 20 hours bimonthly at the reduced rate of $2.30 per hour. He and his wife will now be required to work three days per week and together will be required to work 48 hours each week for $21.50 or about 45? per hour. If Mr. and Mrs. Burnett are scheduled to work at the same time, day care will be required for the children and on Mrs. Burnett’s other work days, Mr. Burnett will be unable to look for a job since he will be babysitting while his wife is at work.
The grant to plaintiff Damiano is in the form of home relief totaling $133.60 per month. Prior to May, 1977, he was assigned to a work relief project in the Oneida County print shop for 45 hours per month. His work assignment has now been increased to 13 days and a total of 91 hours per month while engaged in the same activity when a regular employee would be receiving $3.46 per hour for a 35-hour week and a weekly salary of $121.29.
Theodore Fortin, an eligible home relief recipient, was assigned to work relief for 56 hours per month at the New York State Department of Transportation. His grant amounted to $128.90 per month which was worked off at the minimum wage rate of $2.30 per hour although the regular State employees he worked with received $3.30 to $3.50 per hour for the same work. Since May 1, 1977, he has been required to work three full days a week which his supervisor has requested he work out at 12 days in a row.
Since 13 years of age Cecil Greenfield has had epilepsy which has affected his ability to work and prevented him from obtaining a driver’s license. As an eligible home relief recipient, he receives $116 a month. In February, March and April, 1977, he worked 51 hours a month for that grant. His father drives him two round trips a day for a total of 56 miles and *1009 effective May 1, 1977, his employment requirements were increased to three full days a week.
Trained as a teacher but with a lapsed provisional certificate, Jill Kavner receives a home relief grant of $225 per month. She lacks six credits for permanent certification and has been a full-time student at the State University of New York at New Paltz. She was exempt from the "work-relief’ program but nevertheless volunteered to work off her grant by working three mornings a week as a reading aide at the Woodstock Elementary School. Her local social service agency accepted that offer. Unfortunately she has now been advised that she must work full time three days a week as assigned which makes it impossible for her to attend classes and receive her permanent classification.
Theodora Pattantyus, 63 years of age, receives a grant of $23.25 every two weeks. Since May 2, 1977, she has been assigned for three days per week, seven hours a day, in a Head Start program in the kitchen — washing dishes and pots, cleaning and otherwise assisting there.
Ludwig F. Perwas, 60 years of age, receives a home relief cash grant of $93.60 per month. Prior to May 9, 1977, he worked off his grant at the rate of $3.50 per hour for some 31 hours per month. He has now been advised that for the same grant he will be required to work 91 hours a month. Plaintiff Perwas has been assigned a "work-relief’ obligation of cutting down trees and acting as a flagman for three full days per week (increased from 79 hours per month) to receive his monthly home relief entitlement of $181.
Lastly, Debra Van Derpoel with her husband receives a home relief grant of $49.40 twice monthly and to receive same works three full days a week for Forest Lawn Memorial Park Association, Inc.
As previously pointed out by this court "§ 8 of Chapter 77 appears to confront persons within its purview with two alternatives, neither of which is a happy one; refuse to work (at least one of the plaintiffs has done this) and lose the home relief grant which, while not munificent, does provide a modicum of subsistence without which they probably could not survive with some dignity; or comply with the new law and work in a kind of involuntary servitude at an hourly rate which no one would seriously expect an employee to work for.” (Mem Decision, July 8, 1977.)
It is clear that all of the plaintiffs are in need and eligible *1010 for relief assistance which in New York is guaranteed to the needy by constitutional mandate (NY Const, art XVII, § l).[2]
Recently the Court of Appeals held as unconstitutional, when measured against the breadth of section 1 of article XVII, a statute (section 15 of chapter 76 of the Laws of 1976), which denied public assistance to needy persons under age 21 solely on the ground that they had failed to obtain a final disposition in a support proceeding against a legally responsible relative (Tucker v Toia, 43 NY2d 1).
Prior to that decision, the same court dismissed a constitutional attack on a social service regulation which provided for temporary suspension of aid to recipients who unjustifiably refused to accept employment by finding such individuals no longer needy (Matter of Barie v Lavine, 40 NY2d 565).
The plaintiffs do not object to a "work-relief’ program nor do they object to working off their grants. Their complaint is grounded on the argument that their wages are arbitrarily determined at a rate below that required by the New York State Constitution, and statutes, and lower than the rate applied to others in identical employment.
Four plaintiffs are employed by the counties which provide their grant; three work for other municipalities and four others are assigned to nonprofit agencies.
Section 17 of article I of the New York State Constitution provides that "[N]o laborer, workman or mechanic, in the employ of a contractor or subcontractor engaged in the performance of any public works * * * shall * * * be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used.”
The defendants contend that this constitutional provision applies to employees of contractors and subcontractors only, relying on Matter of Corrigan v Joseph (304 NY 172). I find such reliance to be misplaced.
The employment assignment of various plaintiffs is sufficient to avoid the Corrigan rule and certainly they are not (p 178) "municipal employees in graded positions in the competitive class of civil service.”
I hold that section 8 of chapter 77 of the Laws of 1977 is *1011 unconstitutional and violative of articles I and XVII of the New York State Constitution and permanently enjoin its enforcement. In doing so, I have considered the statutory discrimination between employable home relief recipients and those qualified for Aid to Families with Dependent Children and also the requirements of sections 220 and 652 of the Labor Law.
The application of plaintiffs for an award of counsel fees pursuant to section 1988 of title 42 of the United States Code is denied as being inapplicable to State court proceedings. The plaintiffs’ motion for class action relief on behalf of all others similarly situated is likewise denied. (Matter of Jones v Berman, 37 NY2d 42.)
In conclusion, although the defendants were technically in contempt of the July 21, 1977 order of this court, in view of their timely application thereof at the appellate level and the administrative directive dated September 19, 1977, amplifying the August 10 mailgram relative to the prohibition against further implementation of the work-relief requirement, I find that they sufficiently complied therewith and purged themselves to the extent that the motion to punish any disobedience on their part is denied.

. The statute does not apply to aid recipients under Federally subsidized programs (e.g., Aid to Families with Dependent Children [AFDC]).

. For an excellent treatment of the Constitutional Convention of 1938 and the legislative history of section 1 of article XVII of the New York Constitution see Tucker v Toia, 43 NY2d 1, opn, Gabrielli, J.