OPINION OF THE COURT
Jane S. Solomon, J.
" 'A fair day’s wages for a fair day’s work’: it is as just a *29 demand as governed men ever made of governing. It is the everlasting right of man.” (Carlyle, Past and Present, book I, ch 3.)[1]
This dispute centers on a claim by welfare recipients that they are not receiving fair economic credit for work they perform in exchange for their public assistance grants.
The named plaintiffs are recipients of Home Relief (HR)[2] or Aid to Families with Dependent Children (ADC)[3] who have been assigned to the Work Experience Program (WEP), under the aegis of the New York City Department of Social Services (City DSS). The proposed plaintiffs-intervenors also are HR or ADC recipients assigned to WEP. All plaintiffs seek class certification, and a preliminary injunction staying the enforcement of their WEP obligations until there is a determination of the actual wage paid to regular employees for similar or comparable work and such wage is used, if appropriate, in determining the number of hours which they may be required to work and, further, requiring City DSS to provide written notice to them of these determinations.
In response to these motions, the City defendants cross-move to dismiss the proposed class action complaint on the grounds that plaintiffs have failed to exhaust administrative remedies, the complaint is barred by the Statute of Limitations, the complaint is barred by laches, and the claims for unjust enrichment and quantum meruit fail as a matter of law.[4] Defendant Brian J. Wing, Acting Commissioner of the New York State Department of Social Services (State DSS), cross-moves to *30 dismiss the proposed complaint also on the ground that plaintiffs and proposed intervenors have failed to exhaust their administrative remedies, and otherwise joins the City defendants in opposing the requests for class certification and injunctive relief.
FACTUAL BACKGROUND
While welfare reform has been in the forefront recently, some type of "workfare” program has existed in New York for the past 25 years. Beginning in 1995, New York City began what it refers to as an "enhanced Work Experience Program” in an effort to move public assistance recipients receiving HR benefits into positions of full-time employment. City DSS began assigning all employable recipients of HR into WEP in accordance with certain specified participation rates, with no exemptions for attendance in education or training activities. According to the City defendants, the vast majority of HR recipients in WEP only are in the program for 90 days or less.
In April 1996, City DSS expanded and revised WEP to include ADC recipients. If City DSS made a determination that an ADC recipient did not have work skills, the ADC recipient would be assigned to WEP.[5] (See, Social Services Law § 336-c.) The assignment of an ADC recipient to WEP is limited to a six-month period (unless the goal of full-time employment has been achieved prior to that time), and the hours are limited to 20 hours per week, since the City must provide child care for ADC recipients assigned to WEP and claims it does not have the resources available to do so.[6]
Caseworkers calculate the number of hours a WEP participant must work on a biweekly basis by dividing the amount of the public assistance grant (including food stamps for an HR recipient) by the Federal minimum wage, regardless of the particular WEP assignment.
*31 DISCUSSION
Motion for Intervention
The intervention motion is granted. The intervenors’ claims and those of the original plaintiffs involve common questions of law and fact, so that intervention is appropriate in accordance with the liberal standard provided under CPLR 1013. Moreover, intervention at this early stage of the litigation would not cause any delays or prejudice the substantial rights of defendants.
Motion for Class Certification
The named plaintiffs and intervenors "seek to represent a class of recipients of ADC and HR who have been, are being, or will be assigned to a WEP activity.” There is no dispute that joinder of all the class members is impracticable, that the claims of the named plaintiffs are typical of the claims of the class, and that the named plaintiffs will fairly and adequately represent the class. (See, CPLR 901.)
Moreover, there are common questions relating to the relevant law governing the value of hours that the WEP participants work. (See, CPLR 901 [a] [2].) In particular, the City is wrong that class certification is inappropriate because different statutes and regulations apply to ADC and HR recipients. The issues pressed by plaintiffs apply to both groups and, in its administration of WEP, the City generally treats both groups in the same manner. For example, the City policy manuals for WEP apply to ADC and HR recipients, and the City uses the Federal minimum wage to calculate the WEP hours of both groups.
The City defendants oppose class certification, claiming that the doctrine of stare decisis provides adequate protection to plaintiffs. (See, Matter of Jones v Berman, 37 NY2d 42, 57 [1975].) Here, however, the City defendants have given no assurances to this court that they are willing, absent a court order, to make individualized assessments of the appropriate wages to be paid to all WEP participants. Since stare decisis does not adequately protect subsequent WEP participants, the motion for class certification is granted.
Defendants’ Cross Motions to Dismiss
Both cross motions to dismiss based on plaintiffs’ failure to exhaust administrative remedies are denied.
On February 12, 1997, the State DSS issued a Local Commissioner’s memorandum reminding all local social services of *32 fices that they are responsible for determining the appropriate rate of pay to be used in calculating the number of hours to be worked in WEP, in accordance with Social Services Law § 336-c, notwithstanding that the Department of Labor does not maintain the records necessary to assist in making such a determination.[7] Despite this memorandum, and the initiation of this lawsuit, the position of the State defendant has remained unchanged. It is readily apparent that pursuit of administrative remedies would be futile, in view of the City defendants’ unequivocal position that the minimum wage be used to calculate the hours worked by ADC and HR recipients. (See, Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation, 87 NY2d 136, 140 [1995].) Even if some class members were to obtain relief after a fair hearing, defendants’ interpretation of the law would remain unchanged. Moreover, State DSS goes so far as to attempt to shift the burden to the WEP participants, urging that it is the obligation of the participants to establish, at a fair hearing, that they do the same or similar work as that of regular City employees. Under the circumstances, requiring preliminary resort to the administrative process is unnecessary. (See, Matter of Herberg v Perales, 180 AD2d 166 [1st Dept 1992].)
Although the City does not include them as grounds for dismissal in its notice of motion, it also argues that the action is barred by the four-month Statute of Limitations for CPLR article 78 proceedings, and by laches.[8] These timeliness defenses fail because the government defendants’ conduct is ongo *33 ing, there has been no undue delay in commencing this action, and no defendant has been prejudiced.
Plaintiffs’ Motion for a Preliminary Injunction
To prevail on their motion for a preliminary injunction, plaintiffs must demonstrate (1) a likelihood of success on the merits, (2) irreparable injury absent granting the injunction, and (3) a balance of the equities tipping in their favor. (Aetna Ins. Co. v Capasso, 75 NY2d 860, 862 [1990]; Grant Co. v Srogi, 52 NY2d 496, 517 [1981].)
a. Likelihood of Success
Plaintiffs are likely to succeed on the merits.
i.
The purported goal of WEP is "to enable an increasingly large population of participants to achieve economic independence through permanent full-time employment.” (Affidavit of Seth Diamond, Deputy Commr for NY City Human Resources Admin’s Off of Empl Servs [hereinafter referred to as Diamond Aff.] ¶ 15.) The City defendants maintain that rather than focusing on specialized job skills or training, WEP stresses those habits that are necessary to get and keep full-time employment. Thus, WEP participants are required to report for work at a scheduled time and adhere to a schedule at work. City DSS also maintains that WEP provides the opportunity for participants to improve interpersonal skills, work in a structured setting, and develop discipline.
The City defendants always use the Federal minimum wage, currently $4.75 per hour, to calculate the number of hours a WEP participant must work, because they insist there are no comparable workers in their employ. Deputy Commissioner Diamond says this is because the "job titles” occupied by WEP participants "do not otherwise exist in the City work force,” and that "it is the policy of City defendants not to engage [WEP] participants in work-related activities comparable to full-time City employees.” (Diamond Aff. ¶¶ 19, 24.) Indeed, by memorandum dated April 23, 1997, he instructed the City’s WEP coordinators that "an individual WEP worker should not be assigned to perform the same range of activities as City employees working at the same or an equivalent site.”
Thus, for example, WEP participants employed by the Parks Department are said not to be permitted to use the same variety of tools used by a City park worker, and those employed by *34 the Department of Sanitation are assigned to sweep with push brooms, pick up debris using shovels, and bag or place debris in a can; they are prohibited, however, from transferring garbage into a truck.
The City defendants similarly seek to minimize and distinguish the nature of the tasks performed by WEP participants in clerical positions. The City defendants urge that there is a meaningful distinction between someone who performs "simple” filing and "complex” filing; between someone who answers "routine” telephone inquiries and someone who answers more "complex” inquiries. These purported distinctions are absurd. Moreover, that WEP participants may need training does not necessarily make them different from any other entry-level City employee.
Contrary to the City’s contentions, WEP participants perform tasks that, if not the same, are similar to tasks performed by regular employees. A WEP participant who performs typing, filing, photocopying and other office functions is equivalent to a file clerk, typist, office assistant or clerical worker. A WEP participant who mops floors, empties wastebaskets, dusts, vacuums, maintains grounds or cleans streets or lots is equivalent to a housekeeper, custodial or maintenance worker, caretaker or a sanitation worker. A WEP participant who assists the elderly or assists with food preparation is equivalent to a health aide.
Indeed, the City defendants’ position before this court is at odds not only with common sense but with the City’s own internal draft of the WEP policy and procedures manual that is currently being used in administering the WEP program. The draft states that WEP participants have the right to "be assigned sufficient work to [keep] them productive throughout their assignment. They should be encouraged to ask for more work whenever they believe they are underutilized.” The manual also states that the WEP participants "are expected to become a team player; learn as much as possible; ask for feedback from their supervisor; ask for more work if they are feeling unchallenged.”[9]
*35 ii.
One of the City’s arguments is that there is a Federal scheme preempting the State law issues raised by plaintiffs. It contends that the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Pub L 104-193; 42 USC § 601 et seq. [PRA]) preempts plaintiffs’ State law claims. This is not the case. First, nothing in the PRA requires the defendants to use the Federal minimum wage to calculate the hours worked by WEP participants. In particular, the PRA does not require ADC recipients to work 20 hours a week in WEP, but only that the recipient spend that amount of time participating in one of 12 different activities, such as job skill training, vocational educational training, and pursuit of a GED or high school diploma. (See, 42 USC § 607 [d].) Finally, the PRA applies only to families with children, which excludes most HR recipients. In any event, the PRA cannot preempt State law since it provides only for penalties if a State chooses not to comply with it.
The City also misinterprets the Federal law regarding food stamp recipients. It argues that Federal law requires that the food stamp grant be divided by the minimum wage. However, the provision relied on by the City provides only that the minimum wage is a floor, or the lowest amount by which the food stamp allowance may be divided to reach the maximum hours of work. (See, 7 USC § 2029 [b] [2] [A] [ii].) Thus, there is no Federal law or regulation that preempts New York State statutory law.
iii.
New York State Constitution, article I, § 17 provides, in relevant part, that "[n]o laborer * * * in the employ of a contractor or subcontractor engaged in the performance of any public work, shall * * * be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used” (emphasis added).
Section 164 of the Social Services Law has long governed WEP participants receiving HR. Subdivision (2) (a) provides that "[t]he social services official of a county, city or town which is responsible for providing home relief shall provide for the establishment of public work projects for the assignment of *36 employable persons in receipt of home relief to perform * * * Public work projects may also include the performance of work in the operation of or in an activity of a nonprofit agency or institution pursuant to a contract with the state, a county, city or town” (emphasis added). In other words, workfare assignments historically are to "public work”. And, by virtue of the references to "public work” in this provision, the hours HR recipients are required to work to offset their public assistance benefits are to be set by the constitutional measure for "public work”. Indeed, in Young v Toia (93 Misc 2d 1005 [Sup Ct, Orleans County 1977], mod on other grounds 66 AD2d 377 [4th Dept 1979]) the court so held. This rule remains in effect today.[10]
The statute that pertains to ADC recipients, Social Services Law § 336-c, was enacted in 1990, well after the decision in Young v Toia (supra) where the court recognized that ADC recipients then were not covered by section 164 (2) (a). Here, undoubtedly in response, the Legislature inserted language for wage measurement based on the text of the Constitution, although it did not describe the program as "public work”. Under section 336-c (2) (b), before an ADC recipient may be assigned to WEP, the local social services district must calculate the number of hours an ADC recipient must work, by dividing the family’s benefits by the higher of the State or Federal minimum wage or "the rate of pay for persons employed in the same or similar occupations by the same employer at the same or equivalent site”. (Social Services Law § 336-c [2] [b] [emphasis added]; see also, 18 NYCRR 385.12 [k] [5].)
In analyzing these provisions, the conclusion is inescapable that hours for workfare for both categories of public assistance beneficiaries are measured the same way, with reference to wages for comparable work, an idea which is rooted in the State Constitution. There should be no quarrel that if there is no comparability for HR recipients, under Social Services Law § 164, as with § 336-c, the minimum wage would apply. To avoid the obvious, the City defendants insist that there is no comparable work done by any other of its employees, leaving no wage comparison to be made.
By their terms, the governing schemes require the government defendants to engage in a process. State DSS must *37 require, and City DSS must perform, a preassignment computation of the HR or ADC recipient’s number of hours in the WEP program by determining the general nature of the position assigned and whether it is similar to an existing job. If it is, the comparable wage must be calculated. If that wage is higher than the minimum wage, it must be used to measure hours of work. The statute does not envision that a local social services district would review a job description for a particular job title within the local civil service system to ascertain whether the WEP participant will be performing each and every function set forth for that particular title. The issue to be resolved is whether there is a similarity with respect to work performed or performable by existing staff.
iv.
The reality of the situation is that the distinctions between the work of WEP participants and City employees are artificial at best. The City’s "directive” not to allow WEP participants to do tasks of regular City workers, whether or not often ignored; is a construct apparently designed to avoid compliance with the requirement to engage in a defined process. Moreover, it is not logically related to the purpose of "workfare”, namely, instilling responsible work habits (if not skills!). That notion, beyond peradventure, conceptually requires more than training people to punch time clocks and engage in "make work”.
As there is no distinction between HR and ADC recipients with respect to the nature of their WEP assignments, there is no rationale for distinguishing between them in the method of calculating the hours they are required to participate in WEP to work off their public assistance. That named plaintiffs and intervenors may have different or greater educational backgrounds, work skills and experience than others in the class does not defeat the conclusions here. With the exception of two of the intervenors, all of the named individuals appear to have some work experience, while others may be underskilled or undereducated. When the latter group is not qualified to perform work comparable to that of regular City employees, the minimum wage appropriately may be used to calculate the value of their noncomparable assignments.
The City defendants are wrong, however, in insisting that all WEP participants fall into this undertrained category. Furthermore, poor job performance by some WEP participants does not relieve City DSS of its obligation to determine the proper wage measure before making any WEP assignment. Problems of poor performance should be separately addressed.
*38 I find that under Social Services Law §§ 164 and 336-c, as well as under section 17 of article I of the New York State Constitution, both HR and ADC recipients are entitled to have their hours calculated by using the comparable rate of pay for persons employed in the same or similar occupations by the same employer at the same or similar site.[11]
b. Irreparable Harm
Plaintiffs have also satisfied the second prong of the test for a preliminary injunction, since they will suffer irreparable harm if their labor is taken without fairly measuring the compensation to which they are entitled. (See, Klein, Wagner & Morris v Lawrence A. Klein, P. C., 186 AD2d 631, 633 [2d Dept 1992]; Board of Higher Educ. v Marcus, 63 Misc 2d 268, 273 [Sup Ct, Kings County 1970].) Some of the plaintiffs may now be entitled to credit but unable to use it because they are no longer receiving public assistance.
c. Balance of the Equities
Finally, in weighing the consequences of an injunction in plaintiffs’ favor, the burdens of compliance have been considered. I decline now to grant relief as extensive as plaintiffs seek. I will enjoin prospective compliance by the City defendants with their lawful obligations to make wage comparability calculations[12] and measure WEP participants’ hours by the higher hourly rate. (See, Haskins v Stanton, 794 F2d 1273, 1277 [7th Cir 1986].) The equities here weigh in favor of the plaintiffs to this extent. Retrospective relief can be determined in the future.
*39 d. The Injunction
Before requiring any member of the class heretofore defined and certified to report to and commence his or her WEP assignment, the City defendants shall determine the hourly rate of pay, without regard to fringe benefits, for persons, employed at the same or a similar site by the same employer to whom the WEP participant is to be assigned, who are engaged in comparable work or tasks, and the City defendants shall then calculate the number of hours of work required of the WEP participant with reference to the higher of that hourly wage or the State or Federal minimum wage; provided, however, that compliance herewith is stayed until September 26, 1997.[13]

. Bartlett’s Familiar Quotations, at 577 (14th ed 1968).

. Pursuant to Social Services Law § 158 (a), "[a]ny person unable to provide for himself or herself, or who is unable to secure support from a legally responsible relative, who is not receiving needed assistance or care under other provisions of this chapter, or from other sources, shall be eligible for home relief’. Persons eligible for Aid to Families with Dependent Children (see, n 3, infra) or emergency assistance to families with children are not eligible for HR. (See, 18 NYCRR 370.2.)

. Pursuant to Social Services Law § 349 (A), "[a]id to dependent children shall be given to a parent or other relative as herein specified for the benefit of a child under eighteen years of age” or of a child under 19 years of age if the child is in a specified educational program, as set forth in the statute. A child or minor is eligible for ADC "if the parent or eligible relative with whom he is living has sufficient means to maintain himself but not enough to maintain the child or minor and there are no other resources available therefor.” (18 NYCRR 369.2 [a] [2] [ii].)

. The City defendants’ notice of cross motion states that the basis for the motion is failure to exhaust administrative remedies; the supporting papers, however, address other defenses as well.

. In Davila v Hammons (index No. 407163/97) this court made a determination that the City was assigning ADC recipients to WEP as a matter of course, without regard to the statutory process required by Social Services Law § 335. A preliminary injunction was issued enjoining City DSS from assigning ADC recipients to WEP automatically, without making individualized assessments of employability.

. While the City defendants claim that participation in WEP is limited to six months for ADC recipients, plaintiff Stewart alleges that she has been assigned to WEP since 1994. Similarly, plaintiff Cosgrove, an HR recipient, alleges that she had been assigned to WEP for seven months in 1995; in 1996, she worked at another WEP assignment for approximately seven months.

. Interestingly, State DSS filed the regulation at issue, 18 NYCRR 385.12, in 1990. The regulation tracks the language in Social Services Law § 336-c (2) (b), but further provides that an individual may not be assigned to WEP until "the social services official has obtained a determination of the prevailing rate of pay from the Department of Labor”. (18 NYCRR 385.12 [k] [6].) The February 12, 1997 memorandum states that "[State DSS] ha[s] been informed by the Department of Labor that it does not maintain records necessary to make the determination referred to.” It is inconceivable that State DSS was unaware that the Department of Labor could not make such a calculation when the regulation was promulgated. In any event, State DSS was aware that this was a problem in July 1996 by virtue of the decision in Matter of Church v Wing (229 AD2d 1019 [4th Dept 1996]), in which the Fourth Department held that the State violated its own regulations (18 NYCRR 385.12 [k] [5], [6]) when it failed to obtain the prevailing wage from the Department of Labor before making a WEP assignment. While the February 12 memorandum states that the regulation will be amended to remove the reference to the Department of Labor, this has not been done to date.

. The City defendants also seek to dismiss the seventh claim for unjust enrichment and quantum meruit. This issue is irrelevant to plaintiffs’ motion for a preliminary injunction, and is not further discussed here.

. When WEP participants have attempted to learn new job skills, the City defendants have maligned these efforts as proof of the WEP participants’ inferior abilities. For example, plaintiff Cosgrove’s supervisor alleges that Cosgrove asked and was taught how to use certain computer programs. Although Cosgrove apparently learned these skills, her supervisor states that *35 she was only allowed to "perform simple typing assignments” and only used the computer "to input information and data.”

. Further support for the continued validity of the decision in Young (supra) is found in the State DSS regulations for HR recipients, reissued in 1995, which provide that "[p]ayment credits for work will be made at the State minimum wage or, if higher, at the wage paid to regular employees for comparable work”. (18 NYCRR 385.13 [g] [2].)

. Added support for this conclusion is found in Social Services Law § 336-e, which authorizes the establishment of a job opportunity program for public assistance recipients. Section 336-e (2) provides that "[a] person participating in a program operated pursuant to this section shall be hired by a participating employer for a job of at least twenty hours per week. The salary shall he the wage paid for comparable work done by the employer’s regular employees but in no event shall be less than the state minimum wage” (emphasis added). The fact that this statute requires comparable wages for part-time work undercuts the City defendants’ argument that WEP participants should not receive a wage comparable to that of a City employee because WEP participants do not work full time.

. While I decline to find here that plaintiffs have a due process right to notice of the wage used to calculate their WEP hours and of the methodology used to calculate those hours, I note that, by requiring a determination of the applicable wage before an individual is assigned to WEP, City DSS will be providing de facto notice of the wage rate.

. This date accommodates an anticipated appeal and the four months that City DSS states is needed to comply.